### J. W. RAY v. THE STATE.

No. 5886.   Decided November 24, 1920.

#### 1.—Murder—Requested Charge—Manslaughter—Singling Out Evidence.

Where, upon trial of murder and a conviction of manslaughter, the defendant requested a charge, there being evidence that the deceased killed the brother of the defendant, that that in itself constituted adequate cause, there was no error in refusing same, as it singled out one fact and based adequate cause thereon; besides, such killing occurred years before the homicide, and the parties had met on several occasions, and the main charge on manslaughter was sufficient.

#### 2 —Same—Evidence—Cross-examination.

Where, defendant testified in his own behalf, and the State proved by him on cross-examination that he had been indicted for theft, the defendant in re-direct examination testified that he was acquitted by the jury and there was no exception by the State to this, there was no error in not permitting defendant to further prove by himself that the express company which he had sued, supposedly on the theory that he had been unjustly prosecuted, compromised or settled this matter. Distinguishing Boone v. State, 85 Texas Crim. Rep., 661; Tippett v. State, 37 id., 186.

#### 3.—Same—Argument of Counsel—Practice on Appeal.

Where, upon appeal the record showed that, while the argument of counsel on both sides was improper, yet the counsel for the State in his arguments replied chiefly to the arguments of the counsel for the defendants, there was no reversible error.

Appeal from the Criminal District Court of Dallas. Tried below before the Honorable Robt. B. Séay.

Appeal from a conviction of manslaughter; penalty, five years im-prisonment in the penitentiary.

The opinion states the case.

*Baskett & DeLee,* for appellant.—Cited cases in opinion.

*Alvin M. Owsley,* Assistant Attorney General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of man-slaughter and allotted five years in the penitentiary.

The case, under the testimony, presents the issues of murder, man-slaughter, self-defense as well as a killing in a sudden passion by an instrument not ordinarily calculated to inflict death.

There are some exceptions to the charge, none of which we think are well taken. Appellant asked two special charges, one of which was given and the other refused. Exception was reserved to the failure of the court to give the special requested instruction, which reads as follows:

"In connection with the court's charge on manslaughter, as herein given you, I further charge you that there is evidence in this case to the effect that the deceased herein had, prior to the occasion and homicide for which this defendant is on trial, killed the brother of the defendant; that this circumstance and fact if you so find and believe to be true, in itself constitutes adequate cause, provided the defendant herein, at the time he killed the deceased, if he did kill the deceased and you so find, was in a state of mind incapable of cool re-flection."

We are of opinion the court was not in error in refusing to give this charge. It singled out one fact and based adequate cause upon it. The evidence shows in this connection that that killing occurred some years before this homicide, and that the parties had met on sev-eral occasions. This would be a charge on the weight of the evidence, and we think the court correctly refused to give it. The court gave a full charge on manslaughter, and authorized the jury to consider all the facts and circumstances bearing upon defendant's mind at the time he struck the deceased, which eventuated in his death. The State's theory, which seems to have been disregarded by the jury, would have justified a verdict for murder.

Briefly, the State's case was that appellant followed deceased along Elm Street, and when first seen by a State's witness he was some dis-tance behind but following rapidly and when he overtook deceased immediately struck him on the head with a piece of gas pipe. This crushed his skull and brought about his death after a few hours. Appellant's side of the case is that he did not follow deceased, but that he suddenly met him going west and he, appellant, going east, and when he met deceased, who was carrying a suit case, deceased

set it on the sidewalk and threw his left hand to his hip-pocket; that there was a wagon standing at the edge of the sidewalk which contained plumber's gas tools and pieces of pipe, and that when deceased made the movements mentioned, appellant, immediately seized a piece of gas pipe from the wagon and struck him on the head.

From this viewpoint the court submitted manslaughter, self-defense and a killing under sudden passion with an instrument not calculated to bring about death, and also that the jury would not find appellant guilty of homicide under the facts and circumstances unless it was made evidently to appear that appellant intended to kill deceased. These were the issues of the case.

There is a bill of exceptions which, in substance, shows that on cross-examination of defendant, who testified in his own behalf. the State proved by him that he had been indicted for theft from an express company. On re-direct appellant testified it was a fact that he had been indicted, but had been acquitted by the verdict of the jury. There was no exception reserved to the introduction of this evidence. Appellant then offered to prove by himself that the express company had compromised or settled this matter by later paying him $750, supposedly on the theory he had been unjustly prosecuted by them. The State's objection was sustained, and appellant presents this question for review. We are of opinion that the court was not in error in refusing to admit this testimony. It was hearsay and not legitimate in regard to the proposition on which it was offered. That he may have sued the express company for the prosecution and obtained a judgment or a compromise with the parties, would not be evidence showing his worthiness of credit, and would be but a matter between the express company and the defendant, which might have occurred for many reasons, without affecting the defendant's guilt or innocence or his veracity. We are cited to Boone v. State, 85 Texas Crim. Rep., 661. We are of opinion that case is not in point. Boone testified on his trial that he had pleaded guilty to theft or embezzlement, and in explanation of that, while testifying, he wanted to prove, and this court reversed the judgment because he was not permitted to prove. the reason he pleaded guilty was that his wife had used the money and rather than place her in an awkward position or have her name in the matter, he pleaded guilty; that in fact he had not used the money. Thus was defendant explaining his own act and testifying as to the reasons he pleaded guilty. He was not testifying as to the acts of third parties, but it was his own action, and his reasons for such action in pleading guilty. We are also cited to Tippett v. State, 37 Texas Crim. Rep., 186. Without discussing that case we are of opinion it has no application. The rule has been followed in this State that where defendant's testimony is attacked by showing he had been convicted or indicted for felony, or a case carrying with it moral turpitude, he could make an explanation in regard to his innocence in that transaction. Without

discussing the Tippett case further, we are of opinion it was correct, and this is the rule laid down, as we understand it, in the Boone case, *supra*.

There are quite a number of bills of exception reserved to the speech of private prosecutor, Hon. R. B. Allen. That his arguments, statements and remarks were outside the record is conceded in the bills of exception and manifested by their statements. The trial judge, qualifying the bill, conceded they were but were made in reply to similar statements on the same matters made by counsel for appellant in his speech, and that Mr. Allen was replying to such statements. We deem it unnecessary to set out the remarks made by Mr. Allen, or those made by Mr. Lively, appellant's counsel. They were both clearly outside of the record, and injected into the case facts that were not shown by any witness during the trial. The court, qualifying this bill, uses this language:

"Mr. M. T. Lively, in his closing argument for the defense, several times stated to the jury, that he knew the defendant and knew what kind of man he was and knew what kind of life he had led, and that he knew the defendant to be a good law-abiding man. Mr. Lively further stated in his argument to the jury that he knew a whole lot more about Hugh Henry than the jury did and that he knew that Hugh Henry was a bad man and a dangerous man, and that he knew the facts about the killing of the defendant's brother by the deceased, and that it was a cold blooded murder, and in connection with these statements of Mr. Lively to the jury, he said from time to time 'Why wouldn't they let down the bars? Why wouldn't they turn on the light?' Mr. Allen, on behalf of the State, objected to the foregoing statements of Mr. Lively to the jury and the court sustained the objection. Each time Mr. Allen objected Mr. Lively said to the jury, 'They don't want you to know the facts—they are not willing to turn on the light,' and thereafter Mr. Lively persisted from time to time in repeating said statements and remarks during his argument to the jury, and I make this explanation not only as to this bill of exceptions, but as to all the other bills of exceptions to arguments made by Mr. Allen. In reply to said statements and arguments of Mr. Lively, Mr Allen told the jury that said statements of Mr. Lively made in argument were not evidence in the case and that Mr. Lively should not have made such statements, and in replying thereto and in connection therewith Mr. Allen stated that they should have put the defendant's reputation in issue and should have offered testimony as to what kind of man the defendant was instead of trying to testify to said matters in argument, and in this connection and in reply to Mr. Lively's said statements and arguments to the jury, Mr. Allen used the language and made the remarks to the jury complained of in this bill. No instruction verbal or written was requested by defendant instructing the jury to disregard said argument. No such request was made at any time in reference to Mr. Allen's argument."

As explained we are of opinion that the remarks do not constitute reversible error. That Mr. Lively was outside of the record is not questioned by this bill of exceptions, especially by the qualification of the trial judge. The bill was accepted with this qualification, and, therefore, is taken to be correct. Had Mr. Lively ceased his remarks when the court sustained objection to them, then the argument of Mr. Allen would have been reversible error, but the court certifies that after he had sustained the objection Mr. Lively continued to make these remarks, and under the authorities the remarks of Mr. Allen would not constitute reversible error. These matters have been the subject of a great many decisions which have been collated by Mr. Branch in his Annotated Penal Code on page 205, in Secs. 363 and 364. The whole subject matter has been discussed in these numerous cases, and arguments, under the condition stated in the bill of exceptions here, will not be held to be reversible error. What applies to the bill discussed applies too to the remaining bills with reference to arguments and statements of counsel, because the court's qualification to the bill discussed applies to all of them. There is no question but what the arguments on both sides were out of the record and ought not to have been indulged, and had the defendant been free of blame in the matter, or had ceased when the court sustained the State's objection to the argument, Mr. Allen's argument would have been unauthorized and reversible error.

This disposes of the questions except as to the charges, and a review of those we think are not of a nature which require a reversal of the judgment  The judgment will, therefore, be affirmed.

*Affirmed.*