CHRISTOPHER CLARICH v. THE STATE.

No. 20356.   Delivered April 26, 1939.
Rehearing Denied June 14, 1939.

The opinion states the case.

*John H. Miller,* of Sinton, *Mandell & Combs* and *King C. Haynie,* all of Houston, and *Lyle & Burney,* of Corpus Christi, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

GRAVES, Judge.

The appellant was convicted of murder with malice, and his punishment assessed at confinement in the state penitentiary for twenty years.

It seems that there was a strike on at the shrimp canning plant of Rice Bros., at Aransas Pass, and that a union calling itself the United Agricultural Packers and Canners Union of America, affiliated with C. I. O., a local union at Aransas Pass,— had called a strike of what was termed the shrimp-peeler workers. Appellant was president of this local union, and on the night of September 13, 1938, at a meeting of such union, it had been agreed to picket the cannery where these peelers worked. The pickets were arranged in squads of ten men, each with a captain for each squad, and they met at the hall early on the morning of September 14th, and proceeded to a bridge, connecting the cannery with the sea wall which was built near the water's edge. There seemed to be women and girls who worked at the cannery as shrimp peelers, some of whom desired to

work and had not entered the strike. About twenty or thirty boatmen who were engaged in shrimp fishing,—and whose livelihood depended not only on catching the shrimp but also on there being a sufficient number of peelers at the cannery to take care of the shrimp when brought there,—had gathered near this bridge with the purpose, so they testified, of seeing that all the shrimp peelers who desired to work should be allowed to enter the cannery, some of them testifying that their wives, sisters or daughters worked at the cannery as peelers, and they were there to see that such relatives were not molested. It appears that some persons who did not desire to enter the cannery for the purpose of working were warned away by these boatmen, and possibly some rough treatment accorded some banner bearers who were attempting to picket this place. Eventually appellant, the president of this union, showed up over the top of the sea wall, and, according to the State's testimony, said "Come on boys, let's get them." In the melee that followed James Thomas Cole was shot and killed by a pistol in the hands of appellant, and appellant received a severe beating and a broken arm at the hands of these boatmen. Appellant sought to justify the killing on the grounds of self-defense, and claimed that he had no intention of killing anyone, but that he had been knocked down, and was being beaten while lying on the ground, and that he pulled his pistol and shot twice, without intending to kill anyone, but only for the purpose of defending his own life. That he had been told that the deceased, among others, had threatened his life.

Bill of exceptions No. 1 complains of the fact that Hon. W. B. Moss, County Judge of San Patricio County, participated in this trial in behalf of the State, the objection being because of the fact that he was county judge and was therefore not entitled to thus appear. This is an incorrect proposition of law. Art. 319, R. C. S., reads, in part, as follows: "* * * No county judge shall be allowed to appear and practice as an attorney at law in any county or justice court, except in cases where the court over which he presides has neither original or (nor) appellate jurisdiction."

Following this we held in the Shoope case, 118 Texas Crim. Rep. 138, 38 S. W. (2d) 793, as follows: "One who holds the office of county judge and who is a lawyer is privileged to practice law in the district court. The complaint of the fact that the private prosecutor representing the State was also the county judge is without merit."

In bill of exceptions No. 2 complaint is made of the remarks

of the private prosecutor in that he opened his remarks to the jury with the statement that when arraigned with regard to appellant's plea appellant made the statement: "In a way I am not guilty," and that the appellant gave himself away when he made such statement. Upon appellant's attorney objecting to such remarks, the bill shows that the court instructed the jury to not consider the same for any purpose whatever. The court's qualification shows that the appellant did make such a statement, and upon the trial court instructing the jury to disregard such remarks, there was no exception reserved nor taken by appellant's attorneys. We overrule this bill.

Bill of exceptions No. 3 relates to the court's failure to grant a motion for a continuance. We have examined such motion and find that the same does not conform to the statute regulating such matters. Nowhere therein is it stated that such witnesses were not absent by the procurement or consent of the defendant. See Art. 543, C. C. P. Also see Woods v. State, 28 S. W. (2d) 554; Green v. State, 32 S. W. (2d) 650. This motion is not sufficient also as relates to the absence of the witness Arsola in that he, having disobeyed a subpoena, was subject to an attachment to procure his attendance, and no attachment was applied for throughout the trial. See Sec. 2, Art. 543, C. C. P. We see no error in overruling this motion, especially in the light of the court's qualification to this bill.

The remaining bill relates to an alleged misconduct of the jury in that it is alleged that they received other testimony than that given in open court, they having discussed in their retirement statements relative to the appellant being a dangerous man, a bolshevik, a trouble maker, a C. I. O. organizer, and one who intended to organize the farm workers, who would give the farmers trouble, and other statements that could have affected and did affect the jurors, and caused them to give an extra heavy penalty in this case.

This matter was gone into in the motion for a new trial, and the juror Porterfield, who had previously made an affidavit in which many of the matters just above set forth as discussed by the jury were mentioned by him as having taken place,—upon his testimony before the court the discussions claimed by him to have taken place were narrowed down to a discussion of the C. I. O. and the fact that they were agitators and sit-down strikers, and were probably going to organize the farm laborers; that the C. I. O. was composed mostly of foreigners. When pressed further, he was unable to say what further was said, but did say that Mr. Miles, one of the jurors,

was one who was talking about the C. I. O. business and telling about what they were going to do. Mr. Porterfield said, however, that he based his verdict on the testimony in the case, and what he believed to be the facts, and he did not consider what this other juror said about what he knew relative to this organization. Mr. Miles denied making any such talk as testified to by Porterfield, and heard no such talk, and testified that there was no such talk made by anyone according to his memory.

Lee Lucas, another juror, gave the same testimony as Mr. Miles. Ray Hall, another juror, gave, in substance, the same testimony as Mr. Miles and Mr. Lucas. He heard no statement relative to the C. I. O. and its members or agitators, nor about their organizing farm laborers, nor about their being bolsheviks; no such statement was made in the jury room about the C. I. O.; he heard nothing relative to sit-down strikes and the other matters set forth in the Porterfield affidavit.

In view of the great differences between the allegations in the Porterfield affidavit and his testimony given on the motion for a new trial, the trial court could probably not have given full credence to his testimony. The testimony of the three other jurors, who testified at the hearing of such motion, being in contradiction of that of Mr. Porterfield, we are of the opinion that the trial court was warranted in its conclusion that such a discussion was not had in the jury room. We do not feel inclined to disturb this verdict and judgment because of the alleged jury's misconduct.

We also find in the record a bill of exceptions to the court's failure to give in charge to the jury defendant's special requested charge No. 1 relative to "self-defense, and the reasonable appearance of danger, as well as apparent danger as the same appeared to the defendant." It is our opinion that the charge of the court amply protected appellant's rights in that he charged the jury, in substance, that it was not necessary that the danger itself be real, but only that it reasonably appeared to the defendant, from his standpoint, that he was in danger of losing his life, even though there was no actual danger in fact, in such event the defendant shot and killed Mr. Cole, then he should be acquitted.

The careful trial court also charged the law relative to communicated threats, and whether the threats were made or not, if the defendant believed they were made, then the court told the jury he had a right to act thereon in his own self-defense, as it reasonably appeared to him at the time, and be governed by the acts and words of the deceased and those with him at the time of the killing. We think the court

gave the appellant a correct charge on the law of the case as applied to the evidence.

The judgment is accordingly affirmed.

## ON MOTION FOR REHEARING.

HAWKINS, Judge.

Appellant takes the position that the evidence heard on the motion for new trial makes no issue on the question of the misconduct of the jury. In view of his contention we have again carefully gone over all of the testimony presented on the hearing of the motion for new trial. We are unable to agree that no issue of fact was raised by such evidence. The trial court decided it in favor of the State. The rule controlling is stated very clearly in Day v. State, 120 Texas Cr. R. 17, 48 S. W. (2d) 266, as follows: "In cases where, as in the present instance, the evidence heard on the motion for new trial is conflicting as to the existence of the fact or circumstance upon which the claim of misconduct of the jury is founded, the decision of the trial judge is conclusive upon this Court unless from the record it is apparent that the trial judge was clearly wrong. Such is the rule that has prevailed since the beginning of our jurisprudence. Obviously, there is no other guide when the matter comes before the appellate court. The finding of the judge on conflicting evidence is analogous to the verdict of the jury upon the testimony. In each instance the result is binding on the court unless its unsoundness is demonstrated by the record." We are of opinion the evidence here makes proper the application of said rule. Nothing is observed which indicates any abuse of discretion on the part of the trial court.

Appellant contends that bill of exception number two should be considered because he says the purported qualification to the bill by the court is in fact a contradiction thereof, and that under the authority of Cochrell v. State, 85 Texas Cr. R. 326, 211 S. W. 939, it is entitled to consideration. We are inclined to the view that the statement upon which appellant relies is out of harmony with the general rule that if appellant accepts and files a bill with a contradictory qualification he is nevertheless bound thereby. In view of the qualification it would not have been inappropriate for the trial judge to have refused the bill, but we apprehend he desired to apprise this Court that the incident complained of did occur but no exception was reserved thereto. When appellant accepted and filed the bill without exception to the qualification he became

bound thereby. To support our present holding and that in our original opinion we cite the following cases, in which the qualification was in direct conflict with the bill, and in some of which cases opinions were written by the author of the Cockrell opinion (supra). Evans v. State, 132 Texas Cr. R. 556, 106 S. W. (2d) 299; Ralston v. State, 135 Texas Cr. R. 100, 109 S. W. (2d) 185; Powell v. State, 134 Texas Cr. R. 244, 114 S. W. (2d) 894; King v. State, 135 Texas Cr. R. 513, 121 S. W. (2d) 340; Dobbins v. State, 127 Texas Cr. R. 380, 76 S. W. (2d) 1057; LeFors v. State, 130 Texas Cr. R. 426, 94 S. W. (2d) 738; Yoakum v. State, 131 Texas Cr. R. 194, 97 S. W. (2d) 188; Blackerby v. State, 131 Texas Cr. R. 629, 101 S. W. (2d) 239; Barnett v. State, 123 Texas Cr. R. 423, 59 S. W. (2d) 389; Ray v. State, 116 Texas Cr. R. 575, 28 S. W. (2d) 1084; Wilhite v. State, 116 Texas Cr. R. 314, 27 S. W. (2d) 817; Jarman v. State, 112 Texas Cr. R. 239, 16 S. W. (2d) 130; Vardeman v. State, 106 Texas Cr. R. 378, 292 S. W. 546; Barnes v. State, 106 Texas Cr. R. 394, 292 S. W. 548; Smith v. State, 104 Texas Cr. R. 616, 286 S. W. 223; Walker v. State, 104 Texas Cr. R. 26, 282 S. W. 245; Brown v. State, 103 Texas Cr. R. 420, 281 S. W. 210; Hahn v. State, 101 Texas Cr. R. 491, 276 S. W. 287; Jones v. State, 89 Texas Cr. R. 6, 229 S. W. 865; Simmons v. State, 93 Texas Cr. R. 421, 248 S. W. 392; Stevens v. State, 68 Texas Cr. R. 282, 150 S. W. 944. We have been at some pains to cite authorities because the announcement in Cockrell's case (supra) is given some prominence in 4 Texas Jur., Sec. 192, p. 273. The general rule is stated correctly in Sec. 194.

Appellant renews complaint because the trial court refused his special requested charge number one. While said instruction was refused we observe that the trial judge adopted same and incorporated it in his main charge largely using the same language employed in the requested instruction, and generally following the very wording of the special charge. Hence, no error resulted to appellant in refusing to give the instruction in the form of a requested charge.

The motion for rehearing is overruled.